Anthony Barnes (Bar No. 199048)
Jason Flanders (Bar No. 238007)
Email: amb@atalawgroup.com
AQUA TERRA AERIS LAW GROUP LLP
4030 Martin Luther King Jr. Way
Oakland, CA 94609
Phone: (917) 371-8293

*Attorneys for Plaintiff*
CALIFORNIA SPORTFISHING PROTECTION ALLIANCE

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| CALIFORNIA SPORTFISHING PROTECTION ALLIANCE, a non-profit corporation,<br><br>Plaintiff,<br><br>vs.<br><br>MCLANE FOODSERVICE, INC., a Texas corporation,<br><br>Defendant. | Case No.: 20-cv-1111 KJM JDP<br><br>**CONSENT DECREE** |

# CONSENT DECREE

**WHEREAS,** California Sportfishing Protection Alliance (hereinafter "CSPA") is a non-profit entity dedicated to protecting California surface waters from pollution and degradation, among other objectives.

**WHEREAS**, McLane Foodservice, Inc. ("McLane or "Defendant") owns and operates a foodservice warehouse and distribution facility at 800 E. Pescadero Avenue, Tracy, CA 95304 ("Facility").

**WHEREAS**, the Facility is categorized under Standard Industrial Classification ("SIC") Codes 4225 (General Warehousing and Storage) and 5141 (Groceries, General Line).

**WHEREAS**, stormwater discharges associated with industrial activity at the Facility are regulated by the National Pollutant Discharge Elimination System ("NPDES") General Permit No. CAS000001 [State Water Resources Control Board], Water Quality Order No. 2014-57-DWQ ("General Permit" or "Permit"), and the Federal Water Pollution Control Act, 33 U.S.C. § 1251 *et seq.* ("Clean Water Act" or "CWA"), Sections 301(a) and 402, 33 U.S.C. §§ 1311(a), 1342;

**WHEREAS**, Defendant's operations at the Facility result in discharges of pollutants into waters of the United States and are regulated by the Clean Water Act Sections 301(a) and 402, 33 U.S.C. §§ 1311(a), 1342;

**WHEREAS**, the General Permit requires all permittees, including Defendant, to comply with, inter alia, the following mandates: (1) develop and implement a stormwater pollution prevention plan ("SWPPP") and a stormwater monitoring implementation plan ("MIP"), (2) control pollutant discharges using, as applicable, best available technology economically achievable ("BAT") or best conventional pollutant control technology ("BCT") to prevent or reduce pollutants through the development and application of Best Management Practices ("BMPs"), which must be included and timely updated in the SWPPP, (3) implement additional BMPs to reduce and eliminate discharges necessary to comply with any and all applicable Water Quality Standards ("WQS"), and (5) implement a monitoring and reporting program designed to assess compliance with the Permit;

1  **WHEREAS**, on February 10, 2020, Plaintiff issued a notice of intent to file suit ("60-Day Notice") to Defendant, its registered agent, the Administrator of the United States Environmental Protection Agency ("EPA"), the Executive Director of the State Water Resources Control Board ("State Water Board"), the Executive Director San Francisco Bay Regional Water Quality Control Board ("Regional Water Board"), and the Regional Administrator of EPA Region IX, alleging violations of the Clean Water Act and the General Permit at the Facility;

**WHEREAS**, on June 2, 2020, CSPA filed a complaint against McLane in the Eastern District of California entitled *California Sportsfishing Protection Alliance v. McLane Foodservice, Inc.*, Civil Case No. 2:20-cv-01111-KJM-EFB, alleging violations of the General Permit and CWA based on the 60-Day Notice;

**WHEREAS**, Defendant denies all allegations set forth in the 60-Day Notice and the Complaint relating to the Facility;

**WHEREAS**, Plaintiff and Defendant (collectively "Settling Parties" or "Parties"), without adjudication of CSPA's claims or any admission of liability by McLane, agree that it is in their mutual interest to enter into a Consent Decree setting forth terms and conditions to resolve the allegations set forth in the 60-Day Notice and Complaint in full, subject to enforcement of this Consent Decree, to avoid the cost and uncertainties of further litigation;

**WHEREAS**, all actions taken by Defendant pursuant to this Consent Decree shall be made in compliance with all applicable federal, state and local rules and regulations.

**NOW THEREFORE IT IS HEREBY STIPULATED BETWEEN THE SETTLING PARTIES AND ORDERED AND DECREED BY THE COURT AS FOLLOWS:**

1.   The Court has jurisdiction over the subject matter of this action pursuant to Section 505(a)(1)(A) of the CWA, 33 U.S.C. § 1365(a)(1)(A);

2.   Venue is appropriate in the Eastern District Court pursuant to Section 505(c)(1) of the CWA, 33 U.S.C. § 1365(c)(1), because the Facility at which the alleged violations are taking place is located within this District;

3. The Complaint states a claim upon which relief may be granted against Defendant pursuant to Section 505 of the CWA, 33 U.S.C. § 1365;

4. CSPA has standing to bring this action;

5. The Court shall retain jurisdiction over this action for purposes of interpreting, modifying, or enforcing the terms of this Consent Decree.

## I. OBJECTIVES

6. It is the express purpose of the Setting Parties through this Consent Decree to further the objectives of the CWA, and to resolve all issues alleged by CSPA in its 60-Day Notice and Complaint.

7. In light of these objectives and as set forth fully below, Defendant agrees to comply with the provisions of this Consent Decree, terms and conditions of the General Permit, and all applicable sections of the CWA at the Facility.

## II. AGENCY REVIEW AND CONSENT DECREE TERM

### A. AGENCY REVIEW OF CONSENT DECREE

8. Agency Review. Plaintiff shall submit this Consent Decree to the United States Department of Justice and the EPA (the "Federal Agencies"), within three (3) business days of the final signature of the Parties, for agency review consistent with 40 C.F.R. § 135.5. The agency review period expires forty-five (45) calendar days after receipt by the Federal Agencies, as evidenced by certified return receipts, copies of which shall be provided to Defendant. In the event that the Federal Agencies object to entry of this Consent Decree, the Parties agree to meet and confer to attempt to resolve the issue(s) raised by the Federal Agencies.

9. Court Notice. Plaintiff shall notify the Court of the receipt date by the Federal Agencies, as required by 40 C.F.R. § 135.5, in order coordinate the Court's calendar with the 45-day review period.

10. Entry of Consent Decree. Following expiration of the Federal Agencies' 45-day review period, Plaintiff shall submit the Consent Decree to the Court for entry.

1       **B. EFFECTIVE DATE AND TERM OF CONSENT DECREE**

2       11.     <u>Effective Date</u>. The Effective Date of this Consent Decree shall be the date of entry
3  by the Court.

4       12.     <u>Term & Termination</u>. This Consent Decree shall terminate upon the earlier of the
5  following events: (a) three (3) years from the Effective Date; or (b) two (2) years from the Effective
6  Date, if there have been no annual or instantaneous Numeric Action Level ("NAL") exceedances, as
7  defined by the Permit, provided there are no pending dispute resolution proceedings that have been
8  initiated in accordance with Section IV of this Consent Decree. If any dispute resolution
9  proceedings are pending upon the triggering of the earlier of the two events enumerated above, then
10 the term of the Consent Decree shall be extended through completion of such proceedings.

11 **III. COMMITMENTS OF THE SETTLING PARTIES**

12      **A. STORM WATER POLLUTION CONTROL BEST MANAGEMENT PRACTICES**

13      13.     <u>Revised Stormwater Pollution Prevention Plan</u>: The Settling Parties acknowledge
14 that Defendant has recently made significant revisions to the Facility's SWPPP to improve
15 stormwater quality and reduce or prevent discharges from the Facility. The Defendant is
16 implementing, and shall continue to implement, the SWPPP during the term of this Consent Decree.
17 The SWPPP is attached as Exhibit A and incorporated herein by reference.

18      14.     <u>Current and Additional Best Management Practices</u>: In addition to maintaining and
19 implementing the current Best Management Practices ("BMPs") described in the Facility's SWPPP,
20 within forty-five (45) days of the Effective Date, Defendant shall develop and implement the
21 following additional BMPs:

22      a. Employees shall hand sweep outside paved areas weekly and as needed where the
23         vacuum sweeper cannot access;
24      b. Employees shall periodically observe vacuum sweeping performed by the Facility's
25         third-party contractor to confirm sweeping is being performed adequately and as
26         instructed; and
27      c. Employees shall inspect operation work areas during daily operations to ensure
28         adequate implementation and maintenance of operational procedures and pollution

control measures; and train all employees on proper operational procedures and pollution control measures at the time of employment, and annually thereafter. McLane has also recently implemented the following BMPs at the Facility:

a. McLane covered the unpaved portions of the facility with crushed gravel to minimize the tracking of sediments onto the paved areas; diminishing the likelihood the soil materials will be transported into stormwater drains during storm events;

b. McLane increased scheduled filter maintenance for the Facility which is now provided by a stormwater filter maintenance vendor and follows REM Triton's recommended maintenance procedures including quarterly cleaning and biannual filter media replacements; employees perform light cleaning of the filters on an as needed basis and supplemental filter cleaning or media replacement services are requested by McLane based on observed filter conditions; and

c. McLane established a set of new pre-storm event protocols including: (1) using a vacuum sweeping contractor to perform vacuum sweeping of the Facility's paved areas to twice a month; (2) inspecting the REM Triton Filters to ensure they are in good working order; and (3) inspecting the trash compactor area to ensure the area is free of spills and food wastes, and a general inspection of the drainage areas.

The Parties acknowledge that further BMP implementation may be required, potentially including those that achieve BAT/BCT, in order to meet the General Permit's Receiving Water Limitations that require stormwater discharges not cause or contribute to an exceedance of any applicable water quality standards contained in the applicable Regional Board's Basin Plan. This is reflected in the phased approach in this Consent Decree, including the evaluation and implementation of additional BMPs, if deemed necessary, following the 2021-2022 Reporting Period and beyond.

### B. SAMPLING AT THE FACILITY

15. Defendant shall undertake a monitoring program consistent with the terms of the General Permit. During the life of this Consent Decree, Defendant shall collect samples of stormwater discharge from Discharge Locations designated in the SWPPP. Defendant shall collect stormwater samples from each Discharge Location from at least four (4) qualified storm events

("QSE") as required by the General Permit (i.e., two QSEs during the first half of the Reporting Year[1] and two QSEs during the second half of the Reporting Year), to the extent feasible. A QSE, as defined by the Permit, is a storm that produces a discharge from at least one (1) drainage area and is preceded by forty-eight (48) hours with no discharge from any drainage area. If Defendant fails to collect samples as required by the Permit and this Consent Decree, notice shall be provided to Plaintiff within five (5) days following the end of a Reporting Year. If, prior to March 1 of a Reporting Year, McLane has collected samples from two (2) or fewer qualifying storm events, McLane shall, to the extent feasible, collect samples during as many QSEs as necessary until a minimum of 4 storm events have been sampled for the Reporting Year to the extent that there are sufficient number of QSEs.

16. <u>Sampling Parameters</u>: All samples collected in accordance with the General Permit and this Consent Decree shall be analyzed for the parameters listed in Table 1.

17. <u>Methods and Analyses</u>: All samples collected in accordance with the General Permit and this Consent Decree shall be analyzed using the methods specified in the General Permit. Analysis of pH will be conducted using a calibrated portable instrument or, alternatively, in accordance with the methods provided for in 40 C.F.R. Part 136, as permitted by the General Permit.

18. <u>Reporting</u>: Results of all samples collected and analyzed at the Facility during the term of this Consent Decree shall be provided to Plaintiff within twenty-one (21) days of receipt of the sampling results by Defendant or its counsel.

**C. REDUCTION OF POLLUTANTS IN DISCHARGES**

19. <u>Table 1 Numeric Limits</u>: As of the Effective Date, and for the remainder of the term of this Consent Decree, if stormwater samples demonstrate a NAL exceedance, as defined under the terms of the Permit, when compared to the applicable NAL values in the Permit (and contained below in Table 1) in a single Reporting Year, Defendant shall comply with the action plan requirements set forth below.

---

[1] A Reporting Year is defined as July 1 to June 30.

TABLE 1

| Analytes | Averaging Values | Instantaneous Values | Source of Limit |
|---|---|---|---|
| Total Suspended Solids | 100 mg/L | 400 mg/L | General Permit |
| Ammonia | 2.14 mg/L | N/A | General Permit |
| Oil & Grease | 15 mg/L | 25 mg/L | General Permit |
| Chemical Oxygen Demand | 120 mg/L | N/A | General Permit |
| pH | N/A | 6.0-9.0 s.u. | General Permit |

20. <u>Action Plan for Table 1 Exceedances</u>: If storm water samples demonstrate a NAL exceedance, as defined by the Permit and referenced in Table 1, Defendant shall prepare and submit to Plaintiff an action plan for reducing and/or eliminating the levels detected in the stormwater samples ("Action Plan") by July 31 of the year in which the requirement in this paragraph is triggered.

    a. <u>Action Plan Requirements</u>. Each Action Plan submitted shall at a minimum: (1) identify the NAL exceedance(s); (2) explain the possible causes(s) and/or source(s) of each exceedance; (3) identify any additional BMPs that shall be implemented to reduce and/or eliminate the levels observed in the stormwater samples above the limits enumerated in Table 1; and (4) include a schedule for implementation of the proposed BMPs. The time schedule(s) for implementation shall ensure that all BMPs are implemented as soon as possible, but in no case later than October 1 of the upcoming Reporting Year. Defendant shall notify CSPA in writing when an Action Plan has been implemented.

        i. If an Action Plan is required following the 2021-2022 Reporting Year under the terms of this Consent Decree, then Defendant agrees to take responsive actions, including at a minimum, implementing one or more of the following BMPs:

            (a) Adding covers over drains in areas of concern at the Facility; and/or

            (b) Developing and implementing enhanced cleaning protocols in designated areas of the Facility, which contain focused

standard operating procedures for inspecting, documenting and cleaning, and increase frequency of inspections and cleanings, including but not limited to increasing the frequency of vacuum sweeping on site during the wet season.

    ii.   If an Action Plan is required following the 2022-2023 Reporting Year under the terms of this Consent Decree, then Defendant agrees to consider implementing a range of additional advanced BMPs, including, but not limited to:

    (a)   Adding additional drain covers in areas of concern at the Facility such as high traffic areas, truck parking, and operating areas outside of the maintenance shop;

    (b)   Minimize exposure with the use of shelter;

    (c)   Divert run-on/run-off with use of berms;

    (d)   Capture and infiltration of storm water consistent with Volume-Based BMP standards specified in the Permit (Section X.H.6.a); and/or

    (e)   Capture and treatment of storm water with media and chemical based systems, consistent with the Flow-Based BMP standards specified in the Permit (Section X.H.6.b).

Further evaluation potentially including additional targeted sampling may be necessary to determine the advanced BMPs that are appropriate.

    21.    Action Plan Review: Upon receipt of the Action Plan, Plaintiff may review and comment on the Action Plans. If requested by Plaintiff within thirty (30) days of receipt of such Action Plan, the Parties shall meet and confer to discuss the contents of the Action Plan and the adequacy of the proposed measures to improve the quality of the Facility's stormwater to a level at or below the NALs. If within twenty-one (21) days of the Parties meeting and conferring, the Parties do not agree on the adequacy of the additional measures set forth in the Action Plan, the Parties shall engage the dispute resolution procedures contained in Section IV of this Consent Decree.

### D. VISUAL OBSERVATION AND EMPLOYEE TRAINING RECORDS

22. During the term of this Consent Decree, Defendant shall comply with all employee training requirements in the General Permit and SWPPP.

23. <u>Visual Observations Records</u>: Defendant shall provide CSPA with a copy of visual observations records maintained under the terms of the Permit and SWPPP within fourteen (14) days of receipt of a written request from CSPA for those records.

24. <u>Employee Training Records</u>: The Defendant shall provide CSPA with a copy of employee training records maintained under the terms of the Permit and SWPPP within fourteen (14) days of receipt of a written request from CSPA for those records.

### E. COMPLIANCE MONITORING AND REPORTING

25. <u>Site Inspections</u>. Every year during the life of this Consent Decree, Plaintiff may conduct one annual site inspection of the Facility ("Site Inspection") for the purpose of ensuring compliance with this Consent Decree and the General Permit. The Site Inspection shall occur during normal business hours, and Plaintiff shall provide Defendant with no less than forty-eight (48) notice prior to a Site Inspection in anticipation of wet weather, and seventy-two (72) hours' notice during dry weather.

26. Notice will be provided via electronic mail to the individuals designated in the correspondence provision at paragraph 51, below. During any wet weather inspection, Plaintiff may request that Defendant collect a sample of stormwater discharge from the Facility's designated industrial discharge point(s) referenced in its SWPPP, to the extent that such discharges are occurring. Provided that Plaintiff has complied with the 48-hour pre-inspection notice provision specified in Paragraph 25, Defendant shall collect the sample and provide a split sample to Plaintiff. Additionally, provided that Plaintiff has complied with the 48 hour pre-inspection notice provision specified in Paragraph 25, Plaintiff's representative(s) may observe the split sample(s) being collected by Defendant's representative, and Plaintiff shall be permitted to take photographs or video recording during any Site Inspection.

27. <u>Document Provision</u>. During the term of this Consent Decree, Defendant shall provide Plaintiff with a copy of all documents submitted to or received by the Regional Board or the State Board concerning the Facility's stormwater discharges including, but not limited to, all

documents and reports submitted as required by the General Permit. Such documents shall be provided to the Plaintiff contemporaneously with submission to such agency. Alternatively, if the submission to the Regional Board or State Board is made via the State Board's Stormwater Multiple Application and Reporting Tracking System ("SMARTS"), Defendant may satisfy this requirement by providing notice to Plaintiff via electronic mail that said results have been uploaded to SMARTS within seven (7) days of uploading said documents.

28.   <u>Compliance Monitoring</u>. Defendant agrees to partially defray costs associated with Plaintiff's monitoring of Defendant's compliance with this Consent Decree by paying Plaintiff the additional sum of Five Thousand Dollars ($5,000.00). Such payment shall be made within forty-five (45) days of the Effective Date or by January 4, 2021, whichever is later, payable to: Aqua Terra Aeris Law Group LLP, Attn: Anthony M. Barnes and delivered by overnight carrier to Aqua Terra Aeris Law Group, 4030 Martin Luther King Jr .Way, CA 94609.

F.   **ENVIRONMENTAL MITIGATION, LITIGATION FEES AND COSTS, STIPULATED PENALTIES, AND INTEREST**

29.   <u>Mitigation Payment</u>: To remediate the alleged environmental harms resulting from allegations in the Complaint and in recognition of the good faith efforts of Defendant to comply with all aspects of the General Permit and CWA, and in lieu of payment of any penalties, which have been disputed by Defendant but may have been assessed had this action been adjudicated in a manner adverse to Defendant, Defendant agrees to make a total payment of Sixteen Thousand Dollars ($16,000.00) to the Rose Foundation made within forty-five (45) days of the Effective Date or by January 4, 2021, whichever is later, for environmental project activities that will benefit the Old River and its watershed, payable to the Rose Foundation for Communities and the Environment and sent via overnight mail to Rose Foundation, 201 4th St APT 102, Oakland, CA 94607. Defendant shall provide CSPA with a copy of such payment.

30.   <u>CSPA's Fees and Costs</u>: Defendant agrees to pay a total of Thirty Nine Thousand Dollars ($39,000.00) to CSPA to partially reimburse Plaintiff for its investigation fees and costs, expert/consultant fees and costs, reasonable attorneys' fees, and other costs incurred as a result of investigating and filing the lawsuit, and negotiating a resolution of this matter. The payment shall be made within forty-five (45) days of the Effective Date or by January 4, 2021, whichever is later, payable to: Aqua Terra Aeris Law Group LLP, Attn: Anthony M. Barnes and delivered by

overnight carrier to Aqua Terra Aeris Law Group, 4030 Martin Luther King Jr. Way Oakland, CA 94609.

31.     <u>Interest on Late Payments</u>: Defendant shall pay interest on any payments, fees, or costs owed to Plaintiff under this Consent Decree that Plaintiff has not received by the due date. The interest shall accrue starting the first day after the payment is due and shall be computed at a rate of 4% per year. Interest on late payments shall be made payable to Plaintiff's Counsel at Aqua Terra Aeris Law Group, 4030 Martin Luther King Jr. Way, Oakland CA, 94609.

## IV. DISPUTE RESOLUTION

32.     This Court shall retain jurisdiction over this matter for the term of this Consent Decree for the purposes of enforcing its terms and conditions, and adjudicating all disputes among the Parties that may arise under the provisions of this Consent Decree. The Court shall have the power to enforce this Consent Decree with all available legal and equitable remedies, including contempt.

33.     <u>Informal Dispute Resolution</u>. If a dispute under this Consent Decree arises, either Party may invoke the informal dispute resolution procedures of this Paragraph by notifying the other Party in writing of the matter(s) in dispute and of the disputing Party's proposal for resolution. The Parties shall then meet and confer in good faith (either telephonically or in person) within twenty-one (21) days of the date of the notice in an attempt to fully resolve the dispute no later than thirty (30) calendar days from the date of the notice. The Settling Parties will discuss the dispute and make reasonable efforts to devise a mutually acceptable plan to resolve the dispute. The Settling Parties may, upon mutual written agreement, extend the time to conduct the meet and confer discussions. If the meet and confer discussions fail to resolve the dispute, the Settling Parties shall request a magistrate judge of this court to conduct a mediation session pursuant to the procedures as the magistrate judge may require. The mediation session shall be held within forty-five (45) days of the conclusion of the meet and confer discussions, or as soon thereafter as the schedule of the magistrate judge will permit.

34.     <u>Formal Dispute Resolution</u>. If the Parties cannot resolve the dispute pursuant to the informal dispute resolution procedures described above in paragraph 32, either Party may initiate the formal dispute resolution procedures in this Paragraph by filing an appropriately titled motion

in the United States District Court for the Eastern District of California to determine whether either Party is in violation of the Consent Decree and, if so, to require the violating Party to remedy any violation identified by the District Court and the timeframe within which the remedy must be implemented. In resolving any dispute arising from this Consent Decree before the Court, the Parties shall be entitled to seek fees and costs incurred pursuant to the provisions set forth in Section 505(d) of the Clean Water Act, 33 U.S.C. § 1365(d), and applicable case law interpreting such provisions.

## V.  MUTUAL RELEASE OF LIABILITY AND COVENANT NOT TO SUE

35.  <u>Plaintiff's Waiver and Release of Defendant</u>. In consideration of the above, upon the Effective Date of this Consent Decree, Plaintiff, on its own behalf and on behalf of its officers and directors, release Defendant, its officers, directors, managers, employees, members, parents, subsidiaries, divisions, affiliates, successors or assigns, agents, attorneys and other representatives, from and waives all claims that were or could have been raised based on the facts alleged in the 60-Day Notice and/or the Complaint up to and including the Termination Date of this Consent Decree.

36.  <u>Defendant's Waiver and Release of Plaintiff</u>. In consideration of the above, upon the Effective Date of this Consent Decree, Defendant, on its own behalf and on behalf of its officers, directors, employees, parents, subsidiaries, affiliates and each of their successors or assigns, release Plaintiff, its officers and directors, from and waives all claims related to the 60-Day Notice and/or the Complaint up to and including the Termination Date of this Consent Decree.

## VI. MISCELLANEOUS PROVISIONS

37.  <u>No Admission of Liability</u>. The Parties enter into this Consent Decree for the purpose of avoiding prolonged and costly litigation. Neither the Consent Decree nor any payment pursuant to the Consent Decree shall constitute or be construed as a finding, adjudication, or acknowledgement of any fact, law or liability, nor shall it be construed as an admission of violation of any law, rule, or regulation. The Defendant maintains and reserves all defenses it may have to any alleged violations that may be raised in the future.

38. <u>Counterparts</u>. This Consent Decree may be executed in any number of counterparts, all of which together shall constitute one original document. Electronic and/or facsimile copies of original signatures shall be deemed to be originally executed counterparts of this Consent Decree.

39. <u>Authority</u>. The undersigned representatives for Plaintiff and Defendant each certify that s/he is fully authorized by the party whom s/he represents to enter into this Consent Decree. A Party's signature to this Consent Decree transmitted by facsimile or electronic mail shall be deemed binding.

40. <u>Construction</u>. The language in all parts of this Consent Decree shall be construed according to its plain and ordinary meaning, except as to those terms defined in the Permit, the Clean Water Act, or specifically herein. The captions and paragraph headings used in this Consent Decree are for reference only and shall not affect the construction of this Consent Decree.

41. <u>Full Settlement</u>. This Consent Decree constitutes a full and final settlement of this matter.

42. <u>Integration Clause</u>. This is an integrated Consent Decree. This Consent Decree is intended to be a full and complete statement of the terms of the agreement between the Parties and expressly supersedes any and all prior oral or written agreements, covenants, representations, and warranties (express or implied) concerning the subject matter of this Consent Decree.

43. <u>Severability</u>. In the event that any provision, paragraph, section, or sentence of this Consent Decree is held by a court to be unenforceable, the validity of the enforceable provisions shall not be adversely affected.

44. <u>Choice of Law</u>. The laws of the United States shall govern this Consent Decree.

45. <u>Diligence</u>. Defendant shall diligently file and pursue all required permit applications for the structural BMPs and shall diligently procure contractors, labor, and materials needed to complete all BMPs by the required deadlines.

46. <u>Effect of Consent Decree</u>. Compliance with this Consent Decree does not mean that Defendant is complying with the General Permit, the Clean Water Act, or any other law, rule, or regulation.

47. <u>Negotiated Settlement</u>. The Settling Parties have negotiated this Consent Decree, and agree that it shall not be construed against the party preparing it, but shall be construed as if the

Settling Parties jointly prepared this Consent Decree, and any uncertainty and ambiguity shall not be interpreted against any one party.

48.	Modification of the Consent Decree. This Consent Decree, and any provisions herein, may not be changed, waived, discharged, or terminated unless by a written instrument, signed by the Parties and approved by the Court. Any request to modify any provision of the Consent Decree, including any deadline(s) set forth herein, must be made in writing at least fourteen (14) days before the existing deadline(s) applicable to the provision(s) proposed to be modified.

49.	Assignment. Subject only to the express restrictions contained in this Consent Decree, all of the rights, duties and obligations contained in this Consent Decree shall inure to the benefit of and be binding upon the Parties, and their successors and assigns. Defendant shall notify Plaintiff within ten (10) days of any assignment.

50.	Force Majeure. Neither of the Parties shall be considered to be in default in the performance of any of their respective obligations under this Consent Decree when performance becomes impossible due to a Force Majeure event. A Force Majeure event is any circumstance beyond a Settling Party's control, including without limitation, any act of God, war, fire, earthquake, flood, windstorm, or natural catastrophe; criminal acts; civil disturbance, vandalism, sabotage, or terrorism; restraint by court order or public authority or agency; or action or non-action by, or inability to obtain the necessary authorizations or approvals from any governmental agency. A Force Majeure event shall not include normal inclement weather, economic hardship, inability to pay, or employee negligence. Any party seeking to rely upon this paragraph to excuse or postpone performance shall have the burden of establishing that it could not reasonably have been expected to avoid the Force Majeure event and which by exercise of due diligence has been unable to overcome the failure of performance. The Parties shall exercise due diligence to resolve and remove any Force Majeure event.

51.	 Correspondence. All notices required herein or any other correspondence pertaining to this Consent Decree shall be, the extent feasible, sent via electronic mail transmission to the e-mail address listed below, or if electronic mail is not feasible, then by certified U.S. mail with return receipt, or by hand delivery to the following addresses:

| If to Plaintiff: | If to Defendant: |
|---|---|
| Anthony M. Barnes | Gary J. Smith |
| Aqua Terra Aeris Law Group LLP | 456 Montgomery Street, Suite 1800 |
| 4030 Martin Luther King Jr.Way | San Francisco, CA 94104-1251 |
| Oakland, CA 94609 | 415.262.4045 |
| amb@atalawgroup.com | gsmith@bdlaw.com |
| | |
| With copies to: | With copies to: |
| Bill Jennings, Executive Director | James Mills |
| California Sportfishing Protection Alliance | 4747 McLane Pkwy |
| 3536 Rainier Ave, | Temple, TX 76504 |
| Stockton, CA 95204 | |
| | Dan Ball |
| | 800 E. Pescadero Dr |
| | Tracy, CA 95304 |
| | |
| | Bart McKay |
| | 2085 Midway Dr |
| | Carrollton, TX 75006 |

Notifications of communications shall be deemed submitted on the date that they are emailed, or postmarked and sent by first-class mail or deposited with a hand delivery service. Any change of address or addresses shall be communicated in the manner described above for giving notices.

52. If for any reason the DOJ or the District Court should decline to approve this Consent Decree in the form presented, the Parties shall use their best efforts to work together to modify the Consent Decree within thirty (30) days so that it is acceptable to the DOJ or the District Court. If the Parties are unable to modify this Consent Decree in a mutually acceptable manner that is also acceptable to the District Court, this Consent Decree shall immediately be null and void as well as inadmissible as a settlement communication under Federal Rule of Evidence 408 and California Evidence Code section 1152.

The Parties hereto enter into this Consent Decree and submit it to the Court for its approval and entry as a final judgment.

IN WITNESS WHEREOF, the undersigned have executed this Consent Decree as of the date first set forth below.

APPROVED AS TO CONTENT

1  Dated: _____, 2020                By: _____
                                                    Bill Jennings, Executive Director[2]
2                                                   California Sportfishing Alliance

3

4
   Dated: _____, 2020                By: _____
5                                                   Bart A. McKay
                                                    Division General Counsel
6                                                   McLane Foodservice, Inc.

7

8  APPROVED AS TO FORM

9

10 Dated: _____, 2020                By: _____
                                                    Anthony M. Barnes
11                                                  Attorney for Plaintiff
                                                    California Sportfishing Alliance
12

13
   Dated: _____, 2020                By: _____
14                                                  Gary J. Smith
                                                    Attorney for Defendant
15                                                  McLane Foodservice, Inc.

16

17           **IT IS SO ORDERED.  FINAL JUDGMENT**

18     Upon approval and entry of this Consent Decree by the Court, this Consent Decree shall

19 constitute a final judgment between the Plaintiff and Defendant.

20 DATED: October 14, 2020.

21

22                                              _____
                                                CHIEF UNITED STATES DISTRICT JUDGE
23

24

25

26

27

28
   ---

   [2] The court acknowledges the filing of a copy of this document signed by both parties and their counsel.